UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| The Paul Revere Life Insurance Company,<br>    *Plaintiff*,<br><br>    *v.*<br><br>Michael C. DiBari,<br>    *Defendant.* | Civil No. 3:08cv1795 (JBA)<br><br><br><br>March 11, 2010 |

ORDER ON MOTION TO DISMISS [Doc. # 25]

Paul Revere Life Insurance Company ("Paul Revere") brought this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration "that, under the terms of disability insurance contracts issued to [D]efendant Michael C. DiBari, no duty or obligation exists to pay disability benefits to [D]efendant" as well as that Paul Revere "is entitled to repayment of benefits paid in connection with the disability contracts, and payment of the required premiums necessary to maintain the disability contracts in force." (*See* Compl. [Doc. # 1].) In his Third Amended Answer [Doc. # 43], DiBari—a former dentist who has bilateral carpel tunnel syndrome—asserted three counterclaims related to Paul Revere's handling of his claim and this litigation, all of which Paul Revere has moved to dismiss in a motion now pending before the Court. (Def.'s Mot. Dismiss [Doc. # 25].) For the reasons that follow, Paul Revere's Motion to Dismiss will be granted in part and denied in part.

I.    Background

Paul Revere issued two insurance policies to DiBari: a Disability Income Policy (the "DI Policy") (Compl. at Ex. A) and a Business Overhead Expense coverage insurance policy

(the "BOE Policy") (Compl. Ex. B). DiBari began suffering "severe pain and suffering" from "the onset of bilateral carpel tunnel syndrome," which "ultimately caused him to be unable to perform the important duties of his occupation as a general and cosmetic dentist." (Counterclaim, as part of Third Am. Answer & Counterclaim [Doc. # 43] ("Counterclaim"), at ¶ 12.) He filed claims under the DI and BOE Policies for his disability. In pertinent part, the policies provide a two-part definition of disability:

   a.   You are unable to perform the important duties of Your Occupation; and
   b.   You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

In turn, the policies defined "Physician's Care" to be:

   "Physician's Care" means the regular and personal care of a Physician which, under prevailing medical standards, is appropriate for the condition causing the disability.

The policies permit, but do not require, Paul Revere to conduct a physical examination of DiBari. In pertinent part, the DI Policy states: "At Our expense, We can have a Physician of Our choice examine You as often as reasonably required while Your claim is continuing." DiBari alleges that "Paul Revere—as it was obligated to do under the [DI and BOE Policies]—undertook to investigate, evaluate, and handle Dr. DiBari's claim. The claim was assigned to lead disability specialist Natale Algieri," who, having "worked at Paul Revere for many years, . . . is presumably familiar with the company's claim handling and business practices, goals, and procedures." (*Id.* at ¶ 17.) Paul Revere requested medical records from

DiBari's two treating physicians, Drs. Xistris and Campo. On the basis of these records but without having personally examined DiBari, Paul Revere's in-house medical consultant Dr. John Groves opined that DiBari "was not 'pursuing appropriate care for his condition'" because he had not undergone surgery. (*Id.* at ¶ 19.) But DiBari's physicians, Drs. Xistris and Campo, opined that DiBari "was totally disabled from practicing dentistry" and that "regardless of what additional treatments he might receive, recidivism was likely to follow any further treatments for carpal tunnel if Dr. DiBari returned to the practice of dentistry." (*Id.* at ¶ 20.) Nonetheless, by letter dated November 25, 2008,

> Paul Revere stated to Dr. DiBari in its coverage determination that it had determined "that you have not received nor pursued the appropriate care under the prevailing medical standards for your condition. It is our understanding that with the appropriate care, the evidence suggests you would be able to return to your regular occupation."

(*Id.* at ¶ 27.) PR simultaneously filed this suit (*id.* at ¶ 28), waived the requirement that DiBari pay his monthly premiums, and has continued to pay monthly benefits to DiBari upon DiBari's submission of monthly claim forms, subject to a reservation of rights contained in the November 25, 2008 letter:

> [I]n order to continue to receive benefits, it is your obligation under the terms of your policy to obtain curative treatment that is available and which is reasonably expected to allow you to return to work. Therefore, because you have failed to do so, it is our conclusion that you are no longer eligible for benefits under the terms of your policies.
>
> We have decided that it is in the interest of both parties to seek the assistance of the court in fairly resolving our differences and disputes. . . . [W]e are seeking a determination of the parties' rights and obligations under the Policies and asking the court to resolve the matter in accordance with our coverage determination. Rather than terminate your benefits, while the

3

> lawsuit is pending, we will continue to waive the required premiums and to pay you benefits under your [DI Policy], under a reservation of all rights and defenses until further order or decision by the court. . . .
>
> Pursuant to our reservation of rights, we will seek reimbursement of all benefits paid to you and all premiums owed by you while the lawsuit is pending in the event that it is determined that we do not have liability on your claim. We will also seek payment from you of all benefits previously paid to you under the policies from the point in time you would have been able to perform the important duties of your occupation if you had received the appropriate medical care for the condition you claim causes you to be totally disabled. Finally, we will also seek payment from you for all premiums due and owing under the policies from that same point in time.

(Nov. 25th letter, Ex. A to DiBari's Mem. Supp. Mot. Amend Complaint [Doc. # 42], at 8–9.) DiBari alleges that in concluding he was not entitled to benefits, asserting its broad reservation of rights, and simultaneously filing suit, "Paul Revere effectively denied his claim," and thereby breached the contract. (Counterclaim at ¶ 30.)

There are no allegations regarding any attempt by Paul Revere to settle the claim for any amount.

II.     Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Conclusory allegations are not sufficient. *Id.* at 1949–50.

III.   Discussion

At oral argument DiBari clarified his three counterclaims to be: *first*, that Paul Revere breached the contract by determining that no coverage was warranted and instituting this suit under a reservation of rights, thus "effectively den[ying] his claim;" *second*, that Paul Revere breached the implied covenant of good faith and fair dealing by conducting a flawed and incomplete investigation and thus "fail[ing] to make a good faith effort to determine whether DiBari is disabled under the specific terms of the policy," and also by instituting this declaratory-judgment action under a protocol by which it has reserved its rights to recover payments already made if it is determined that DiBari is not entitled to disability benefits; and *third*, that Paul Revere violates CUTPA/CUIPA[1] by making disability coverage determinations on the basis of flawed and incomplete investigations, and by instituting the declaratory-judgment protocol. He also claims that Paul Revere violates CUTPA/CUIPA by compelling its insureds to undertake litigation in order to recover benefits due and owing. (*See* Tr. 2/2/2010 at 26–27.)

A.   Breach of Contract

The parties agree that Paul Revere has continued to pay an amount of money equal to the amount of benefits to which DiBari claims entitlement. They dispute whether the context in which Paul Revere has made the payments—under a reservation of rights while prosecuting a declaratory-judgment action—constitutes a breach of contract. It does not.

---

[1] See Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*; Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. §§ 38a-815 *et seq.*

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party[,] and damages." *Keller v. Beckenstein*, 117 Conn. App. 550, 558 (2009). Here, DiBari cannot show that Paul Revere has breached the contracts or that he has suffered any damages. If Paul Revere prevails on its claim for a declaration that by refusing to agree to surgery to repair his carpal-tunnel syndrome DiBari has failed to obtain "Physician's Care," then it would not be obligated to pay DiBari's claim. In that case, DiBari would not have been entitled to benefits under the policies, and therefore Paul Revere would not violate the contract by recouping sums it paid after it determined that DiBari had failed to obtain such care. If DiBari shows that he has been receiving "Physician's Care," and is therefore entitled to benefits, then he has received the full amount of those benefits, and by making the payments throughout the time during which DiBari was entitled to them Paul Revere has not breached the contracts. In either case, DiBari cannot show either that Paul Revere breached the policies or that any such breach caused DiBari damages.

The fact that the parties dispute whether DiBari has complied with the contract despite failing to get surgery, and is therefore entitled to the benefits he has already received, does not show Paul Revere's breach. To the contrary, that DiBari suffers from an uncertainty as to whether he is entitled, under the insurance policies, to the money Paul Revere has paid him, is precisely why the declaratory-judgment action is appropriate: the parties "hav[e] adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," and resolution of Paul Revere's claim "will serve a useful purpose in clarifying or settling the legal issues involved" and will "finalize the controversy and offer relief from uncertainty." *See SR Int'l Bus. Ins. Co., Ltd. v. Allianz Ins.*

6

*Co.*, 343 F. App'x 629, 631–32 (2d Cir. 2009) (describing the purposes and ripeness of a declaratory-judgment action (quotations omitted)). *Cf. Missioners of the Co. of Mary, Inc. v. Aetna Cas. & Sur. Co.*, 155 Conn. 104, 113–14 (1967) (explaining, in a duty-to-defend case, that when an insurer is unsure whether its policy coverage is implicated, it has "the opportunity . . . to perform its contractual duty . . . under a reservation of its right to contest" coverage).

DiBari's breach-of-contract claim must be dismissed because he has not shown two of the elements of such a claim: Paul Revere's breach, or any resultant damages.

B. Breach of the Covenant of Good Faith and Fair Dealing

> Connecticut recognizes an independent cause of action arising from a party's breach of the covenant of good faith and fair dealing, which is implied in all contracts including insurance contracts. *See, e.g.*, *Buckman v. People Express, Inc.*, 205 Conn. 166, 171 (1987). . . . [U]nder Connecticut law, a plaintiff pursuing such a claim must show that: (1) two parties entered into a contract under which the plaintiff reasonably expected to benefit; (2) the benefit was denied or obstructed by the other party's actions; and (3) the other party's actions were taken in bad faith. *See Franco v. Yale Univ.*, 238 F. Supp. 2d 449, 455 (D. Conn. 2002).

*Van Dorsten v. Provident Life and Acc. Ins. Co.*, 554 F. Supp. 2d 285, 287 (D. Conn. 2008) (additional citations omitted). "The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004). "[T]he acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Id.* "Subterfuges and evasions violate the obligation of good faith in performance even though

7

the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Elm Street Builders, Inc. v. Enterprise Park Condominium Ass'n, Inc.*, 63 Conn. App. 657, 667 (2001) (citations omitted).

DiBari claims that Paul Revere breached the covenant of good faith and fair dealing implied in his insurance policies in two ways: by conducting an incomplete and flawed investigation into his medical condition, and by applying the protocol of filing a declaratory-judgment action while paying benefits under a reservation of rights. The first theory states a viable breach-of-covenant claim, while the second does not.

### 1. *Incomplete and Flawed Investigation*

DiBari argues that his allegations of Paul Revere's investigation of his claim supports a conclusion that the insurer, in bad faith, obstructed his right to receive disability benefits. The Court agrees. Paul Revere's conclusion that DiBari is not entitled to benefits is based on its determination that by failing to get surgery for his carpal-tunnel syndrome, he has failed to obtain "the regular and personal care of a Physician which, under prevailing medical standards, is appropriate for the condition causing the disability." According to DiBari, however, Paul Revere came to the conclusion that no care would have been "appropriate" for his carpal-tunnel syndrome notwithstanding its having failed to medically examine him or consider his doctor's position that even if DiBari were to get surgery, his carpal-tunnel

8

syndrome would recidivate if, after surgery, he were to return to dentistry. An insurer's "fail[ure] to conduct a reasonable investigation" can give rise to a breach-of-covenant claim under Connecticut law. *See, e.g.*, *Vincoli v. Hartford Underwriters Ins. Co.*, No. FSTCV095009591S, 2009 WL 4845768, *3 (Conn. Super. Ct. Sept. 24, 2009). Moreover, CUIPA specifies that "refusing to pay claims without conducting a reasonable investigation based upon all available information" is an unfair insurance practice. Conn. Gen. Stat. § 38a-816(6)(d). Indeed, "[a]n insured is entitled to expect that a claim examination will include, as part of a reasonable and adequate investigation, consideration of the relevant opinions of the treating physician where a medical issue is unclear or controverted, or consideration of the opinions of an independent physician from the appropriate speciality before deciding to terminate benefits on the basis of a medical conclusion." *Uberti v. Lincoln Nat'l Life Ins. Co.*, 144 F. Supp. 2d 90, 104–05 (D. Conn. 2001).

DiBari alleges that Paul Revere's investigation, which led to its conclusion that he was not entitled to benefits, was unreasonable and not based upon all available information. The November 25th letter does not address DiBari's doctor's opinion that the carpal-tunnel syndrome would recidivate if he were to return to dentistry, and instead merely asserted that the doctor's opinion "overstates the risks involved with carpal tunnel surgery" and that the "generally medically accepted treatment for" the syndrome is surgery. Even though DiBari's treating physician concluded that surgery was not the only medically appropriate course of treatment, Paul Revere concluded, without having medically examined DiBari, that he was not getting appropriate medical care. Although under the policy Paul Revere had no obligation to medically examine DiBari, it did have an obligation to perform some meaningfully "reasonable and adequate investigation," including either a medical

9

examination or "the opinion[] of an *independent* expert." *See id.* (emphasis added). Here, according to DiBari, Paul Revere disclaimed coverage on the strength of opinions of an "in-house medical consultant" and another physician that is not alleged to be an independent physician. (*See* Counterclaim at ¶¶ 19–21.) These allegations of an unreasonable investigation state a claim that Paul Revere breached the implied covenant of good faith and fair dealing, and therefore Paul Revere's DiBari's claim will not be dismissed on this basis.

### 2. *Filing Suit and Reserving Rights*

DiBari also claims that Paul Revere breached the covenant of good faith and fair dealing by filing this declaratory-judgment suit under a reservation of rights to recover money paid to DiBari if it is determined that DiBari was not entitled to the money under the policies. This so-called "protocol" does not show bad faith on Paul Revere's part, and, indeed, insurers are entitled to follow it. *See, e.g.*, *Paul Revere Life Ins. Co. v. Bavaro*, 957 F. Supp. 444, 446, 449 (S.D.N.Y. 1997) (observing this practice by Paul Revere and suggesting its propriety and enforceability); *see also Missioners of the Co. of Mary*, 155 Conn. at 113–14. Paul Revere has continued to pay benefits despite believing that DiBari is not entitled to them. If it is incorrect, and DiBari is entitled to them, then DiBari will not have suffered any income disruption. If the insurer is correct, DiBari cannot show that Paul Revere to have acted in bad faith because DiBari is not entitled, under the policy, to the money he has received, and Paul Revere would not act in bad faith in seeking to recoup it. Thus, DiBari cannot show that his benefits were "denied or obstructed by [Paul Revere's] actions." *Van Dorsten*, 554 F. Supp. 2d at 287.

In following its "protocol," Paul Revere has not denied or obstructed DiBari's benefits, or acted in bad faith. Therefore, to the extent DiBari's breach-of-covenant claim is based on this protocol, that claim must be dismissed.

C. CUTPA

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). A plaintiff may, as here, bring a CUTPA claim premised on an insurer's violation of CUIPA. *See, e.g.*, *Mead v. Burns*, 199 Conn. 651, 665–66 (1986). DiBari bases his CUTPA claim on the same two acts that he alleged violated Paul Revere's duties under the implied covenant of good faith and fair dealing: its following the "protocol" described above, and its conducting flawed investigations. Neither basis provides grounds for a valid CUTPA claim, and therefore DiBari's CUTPA claim must be dismissed.

Even assuming *arguendo* that Paul Revere's protocol is an unfair insurance practice, and although CUIPA specifies that "refusing to pay claims without conducting a reasonable investigation based upon all available information" is an unfair insurance practice, Conn. Gen. Stat. § 38a-816(6)(d), to state a valid cause of action under CUTPA a plaintiff must show "that the unfair settlement practices were committed or performed with such frequency as to indicate a general business practice," *Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 847–48 (1994) (internal quotation omitted). DiBari has not alleged any other instances of Paul Revere engaging in either of these practices. In his counterclaim DiBari listed and described seven court cases resulting in awards against Paul Revere or UNUMProvident (*id.* at ¶ 46) to show a general business practice, but DiBari's own description of these cases show them not to involve the practices of which DiBari complains. Many of the cases involve Paul

11

Revere's overuse or unfair interpretations of independent medical examinations, rather than, as here, the insurer's failure to conduct such an examination in the first place. DiBari alleges that other cases involve Paul Revere's pressuring its insureds to settle, making endless demands for paperwork, or using nominally independent physicians who were, in reality, biased—none of which are practices that DiBari alleges Paul Revere engaged in with him. Furthermore, DiBari's counsel agreed that none of the cases listed in the counterclaim involve the so-called "protocol" at issue in DiBari's breach-of-covenant claim. (Tr. 2/2/2010 at 13.) Because DiBari's allegations do not show any "general business practice" of Paul Revere, they cannot support a claim under CUTPA. *See Lees*, 229 Conn. at 247–48.

DiBari also claims that Paul Revere has a general business practice of compelling its insureds to undertake litigation to recover benefits due and owing. CUIPA prohibits an insurer from "compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." Conn. Gen. Stat. § 38a-816(6)(g). DiBari does not allege that Paul Revere made any settlement offer to him at all, let alone one that was for substantially less than the benefits to which he claims entitlement. Therefore, even if Paul Revere engages in an unfair insurance practice that violates this subsection, it did not apply that practice to DiBari, so DiBari has not suffered any "ascertainable loss" by it. He therefore has no standing to bring a CUTPA claim based on that practice. *See* Conn. Gen. Stat. § 42-110g (CUTPA action may be brought by "[a]ny person *who suffers any ascertainable loss* . . . as a result of the use or employment of a method, act or practice prohibited by" CUTPA (emphasis added)); *Serv. Road Corp. v. Quinn*, 241 Conn. 630, 638–39 (1997) (§ 42-

110g's "ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action").

For these reasons, DiBari's CUTPA claims must be dismissed.

V.      Conclusion

For the reasons stated above, Paul Revere's Motion to Dismiss [Doc. # 25] is GRANTED IN PART and DENIED IN PART.  The motion is denied as to DiBari's claim of a breach of the covenant of good faith and fair dealing, and it is otherwise granted.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of March 2010.